IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| TONY M. AND A.M., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED HEALTHCARE INSURANCE COMPANY, and the EMC CORPORATION EMPLOYEE WELFARE BENEFITS PLAN, <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER** <br><br><br> Case No. 2:19-cv-00165 <br><br> District Judge Dee Benson |

Before the court is Defendants' Motion to Dismiss or, in the alternative, to stay the proceedings. Dkt. No. 15. The motion has been fully briefed by both parties, and the court has considered the facts and arguments set forth in those filings. Pursuant to civil rule 7-1(f) of the United States District Court for the District of Utah Rules of Practice, the court elects to determine the motion on the basis of the written memoranda and finds that oral argument would not be helpful or necessary. DUCivR 7-1(f).

## FACTUAL BACKGROUND

The following facts are taken from Plaintiffs' complaint. They are accepted as true and viewed in the light most favorable to the plaintiff as the non-moving party. *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

Plaintiff Tony M. is a participant in the EMC Corporation Employee Welfare Benefits Plan ("the Plan"), which is administered by United Healthcare Insurance Company ("United"). *Id.* ¶¶ 2-3. Plaintiff A.M. is a beneficiary of the Plan. *Id.* ¶ 3. Tony adopted A. when he was seven years old, after A. had endured years of poverty, neglect, and abuse in El Salvador. Dkt. No. 2 ¶¶ 9-10. In the years following his adoption, A. suffered from numerous psychological conditions and displayed exceptionally violent behavior. *Id.* ¶¶ 11-15. After A. seriously injured Tony, he was placed in juvenile detention where he exhibited traits indicative of psychotic personality disorders. *Id.* ¶ 16. On the recommendation of detention center staff, he was enrolled in a treatment facility for six months and then sent to Sunnycrest Youth Ranch for an additional 18 months. *Id.* ¶ 17. After returning home and initially reacclimating well, A. started once again to exhibit violent and sexually aggressive behavior. *Id.* ¶ 18. On the recommendation of his psychiatrist, he was admitted to Elk River Treatment Program on April 24, 2016. *Id.* ¶¶ 18-20.

In a letter dated August 15, 2016, United denied payment for A.'s treatment at Elk River. *Id.* ¶ 21. The letter stated, "According to [A.'s] insurance guidelines his treatment is considered to be custodial at this time and custodial care is not a covered benefit." *Id.* The letter continued, "Based on our Level of Care Guideline for Mental Health Residential Rehabilitation Level of Care, it is my determination that no further authorization [for treatment at Elk River] can be provided from 08/09/2016." *Id.* It then informed Tony of his right to appeal the adverse decision. *Id.*

On February 8, 2017, about six months after receiving the notice, Tony appealed the denial of payment, arguing that United had violated his ERISA rights and A.'s treatment was

medically necessary. *Id.* ¶¶ 22-24. In response, he received a letter dated March 9 upholding the denial of payment. *Id.* ¶ 27. That letter stated that Tony had "exhausted all available internal appeal/grievance options," but informed him that he could request an independent external review. *Id.* ¶ 27. It contained no additional justifications for upholding the denial of payment. *Id.* The following month, Tony submitted a "level two appeal," in which he wrote that he had contacted United over the phone and had been told that his "level one appeal" was never processed "because it had been mistakenly classified as a provider appeal." *Id.* ¶ 28. Tony reiterated many of his arguments from the "level one appeal," and maintained that A.'s treatment at Elk River was medically necessary, submitting several letters in support of that contention. *Id.* ¶¶ 29-31.

On May 10, 2017, about two weeks after Tony submitted his "level two appeal," United sent Tony a letter from external reviewer MCMC upholding the denial of payment. *Id.* ¶ 32. That letter included the following language: "The independent Board Certified Physician determined that the services at this level of care are not medically necessary . . . . In this case, the Residential Treatment Program level of care is not medically necessary and is considered to be custodial care." *Id.* The Plaintiffs then filed this action in the United States District Court for the District of Utah on March 8, 2019, and Defendants filed a Motion Dismiss on June 21, 2019. Dkt. No. 15.

## MOTION TO DISMISS STANDARD

In considering a motion to dismiss, all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to the non-moving party. *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384

3

(10th Cir. 1997). Plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This court's role "is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient." *Miller v. Glanz*, 948 F.2d 1526, 1565 (10th Cir. 1991).

## DISCUSSION

1) Pending Class Action

Defendants first move for dismissal of all claims based on A.'s membership in a certified plaintiff class in the pending class action captioned *Wit v. United Behavioral Health,* 3:14-cv-2346-JCS (N.D. Cal. May 21, 2014). Dkt. No. 15 at 11. In opposition, Plaintiffs contend that because only United and the Plan (and not United Behavioral Health) are named as defendants in this action, Plaintiff does not belong to the class in *Wit*. Dkt. No. 20 at 5-6. The fact that Plaintiffs chose not to name United Behavioral Health ("UBH") as a defendant does not itself exclude them from the certified class in *Wit*. The relevant certified class is defined as follows:

> Any member of a health benefit plan governed by ERISA whose request for coverage of residential treatment services for a mental illness or substance abuse disorder was denied by United, in whole or in part, on or after May 22, 2011, based upon United's Level of Care Guidelines or United's Coverage Determination Guidelines.

Dkt. No. 15 at 9. In the complaint, Plaintiffs allege that United may have acted through UBH in denying their claims for payment. Dkt. No. 2 at 2. They base their argument for proper venue on the fact that "UBH has a claims processing center in Utah." *Id.* They quote a letter from an external reviewer that refers to "UBH's denial of coverage" in their case. *Id.* at 9. Plaintiffs' failure to name UBH as a party in this action, then, does not exclude them from the certified class in *Wit*.

4

Next, Plaintiffs contend that they do not belong to the certified class in *Wit* because their claims are "different than those brought in *Wit*." Dkt. No. 20 at 6. The types of claims brought in each action do not determine the membership of the *Wit* plaintiff class; the class is specifically delineated by the terms quoted above. Plaintiffs concede that their claims were denied within the relevant time frame. *Id.* They do not dispute that they made a "request for coverage of residential treatment services for a mental illness" that was "denied by United" within this time frame. Rather, they contend that their claim was not denied "based upon United's Level of Care Guidelines or United's Coverage Determination Guidelines." *Id.* Plaintiffs emphasize the "custodial care exclusion" and procedural deficiencies in United's response to their claims. *Id.* at 6-8. Yet in the complaint, Plaintiffs quote the letter from United denying payment of their claims: "Based on our Level of Care Guideline for Mental Health Residential Rehabilitation Level of Care, it is my determination that no further authorization can be provided . . . ." Dkt. No. 2 at 6. The complaint itself makes it clear, then, that Plaintiffs' claim was "denied by United, in whole or in part, on or after May 22, 2011, based upon United's Level of Care Guidelines." *See* Dkt. No. 15 at 9. The alleged procedural deficiencies that followed that denial do not change this fact. Plaintiffs therefore belong to the certified class in *Wit v. United Behavioral Health*.

Plaintiffs lastly contend that United's motion to decertify the class in *Wit* is inconsistent with its motion to dismiss this action based on A.'s membership in *Wit*. Dkt. No. 20 at 8. It is true that those acts are inconsistent in the sense that United cannot prevail on both fronts. Yet United's efforts to decertify the class in *Wit* have thus far been unavailing; the class was certified despite United's opposition, and the court denied its motions to reconsider or appeal class

5

certification. *See Wit,* Dkt. Nos. 174 and 181. So long as the class in *Wit* remains certified, Plaintiffs belong to that class. This action is therefore stayed pending the resolution of *Wit* or the decertification of the relevant plaintiff class in that case.

2) Plaintiffs' Mental Health Parity and Addiction Equity Act Claim

In their memorandum in opposition to Defendants' Motion to Dismiss, Plaintiffs withdrew their second cause of action, a claim under the federal Mental Health Parity and Addiction Equity Act of 2008. Dkt. No. 20 at 4. Plaintiffs' second cause of action is therefore dismissed.

3) Tony M.'s Standing for Individual Claims

Defendants further move to dismiss all of Plaintiff Tony M.'s individual claims because he lacks both statutory and constitutional standing to pursue them. Dkt. No. 15 at 24. Standing to sue under ERISA is conferred by 29 U.S.C. § 1132. The statute states that "a civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). United does not dispute that Tony is a participant in a plan subject to ERISA; rather, United claims that because Tony is suing solely to obtain coverage of treatment for his son, his suit does not fall under the categories outlined in 29 U.S.C. § 1132(a)(1)(B). That subsection, however, is not as restrictive as United claims. The statute authorizes a participant to bring a civil action not only to "recover benefits due to him," but also "to enforce his rights under the terms of the plan." If the latter of these two reasons for bringing a claim were limited in effect to the former, it would be mere surplusage.

To "enforce [one's] rights under the terms of the plan," then, must mean something more than merely to recover personal benefits.

Tony has alleged several harms that constitute violations of "his rights under the terms of the plan." One such right is to have the medically necessary procedures of a participant's beneficiaries covered. Closely related is the right to be reimbursed the costs of any procedures that should have been covered by the plan and that, in the absence of coverage, are in fact paid by the participant. *See*, *Anne M. v. United Behavioral Health*, 2:18cv808-TS, 2019 U.S. Dist. LEXIS 76810, *7-9 (D. Utah May 6, 2019); *Lisa O. v. Blue Cross of Idaho Health Serv.*, 1:12cv285-EJL-LMB, 2014 U.S. Dist. LEXIS 19301, *4-12 (D. Idaho Feb. 14, 2014); *Wills v. Regence BlueCross BlueShield of Utah*, 2:07cv616-BSJ, 2008 U.S. Dist. LEXIS 86059, *24-34 (D. Utah Oct. 23, 2008). Participants are furthermore afforded even broader latitude to seek equitable relief under 29 U.S.C. § 1132(a)(3). Tony therefore has statutory standing to sue individually for the harms alleged.

Defendants further argue that Tony lacks constitutional standing under Article III in this matter. Dkt. No. 15 at 24. They argue that Tony suffered no "injury in fact fairly traceable to the defendant [that is] capable of redress." Dkt. No. 15 at 24-25, *citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Yet Tony alleges that he paid the costs of the treatment that should have been covered by the plan. Dkt. No. 2, ¶ 5. Tony not only paid those costs in fact, but, as the legal guardian of a minor, he had a legal and moral obligation to pay for A.'s medical treatment. *See Anne. M.*, 2019 U.S. Dist. LEXIS 76810, at *7; *cf. Wills*, 2008 U.S. Dist. LEXIS 86059, at *33-34 (holding that a parent had constitutional standing as a subrogee where he had *voluntarily* paid the medical costs of his adult daughter). Tony has therefore alleged a concrete,

particularized injury to himself that is fairly traceable to United's failure to cover A.'s treatment. Tony has constitutional standing to proceed with his individual claims.

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss is hereby DENIED, and their alternative motion to stay these proceedings is GRANTED; Plaintiffs' Second Cause of Action is dismissed; and Defendants' Motion to Dismiss Plaintiff Tony M.'s individual claims is DENIED.

DATED this 9th day of October, 2019.

BY THE COURT:

_____
Dee Benson
United States District Judge